Athan Tsimpedes
TSIMPEDES LAW FIRM
1920 N Street, NW
Suite 300
Washington, DC  20036
(202) 464-9910
Fax (202) 747-2947
*Counsel for Defendants TALK RADIO NETWORK ENTERTAINMENT, INC. and MARK MASTERS*

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ASTERO, LLC,** *et al.*, | ) Case No. 1:13-cv-06005-NLH-JS |
| | ) |
| Plaintiffs, | ) **REPLY TO OPPOSITION TO** |
| | ) **MOTION TO VACATE** |
| v. | ) **ENTRY OF DEFAULT** |
| | ) |
| **TALK RADIO NETWORK** | ) **MOTION DATE: 3/17/2014** |
| **ENTERTAINMENT, INC.,** *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

COME NOW, Defendants TALK RADIO NETWORK ENTERTAINMENT, INC. and MARK MASTERS, through counsel, and in Reply to Plaintiffs' Opposition to the Motion of Vacate the Entry of Default of January 21, 2014, state as follows.

Talk Radio Network Entertainment, Inc. ("TRN-E") and Mark Masters move to vacate and set aside the entry of default on grounds that the plaintiffs' purported service of process was improper and insufficient. TRN-E and Masters show that meritorious defenses to the allegations of the Amended Complaint are available to them in that all claims raised by the plaintiffs are subject to mandatory mediation and arbitration under the parties' Host Agreement. (Amended Complaint, Exhibit A, at 24-25). Further, the defendants have shown that setting aside the entry of default will not prejudice the plaintiffs. At all times the plaintiffs have been bound by the confidential dispute

resolution provisions of the Host Agreement. However, they ignored these procedures for tactical advantage and to avoid the confidentiality restraints that the parties agreed upon. They are not prejudiced in being required to abide by their own agreements.

1. <u>Improper and Insufficient Service of Process</u>

Service was purportedly made under the "office service" procedures of Rule 7(D)(2) of the Oregon Rules of Civil Procedure. As it relates to Mark Masters, the purported "office service" is clearly improper. The Oregon rule states that service may be made on an:

> "individual defendant, by personal service upon such defendant or an agent authorized by appointment or law to receive service of summons or, if defendant personally cannot be found at defendant's dwelling house or usual place of abode, then by substituted service or by office service . . ."

(ORCP 7 D(3)(a)(i)). Plainly, this rule permits "office" service on an individual defendant only if the individual cannot be found at his or her home or usual place of abode. Plaintiffs made no attempt to serve Mark Masters at his dwelling, and do not claim to have done so. Therefore, the plaintiffs did not comply with the requirements of ORCP 7D(3), and failed to satisfy the requirements of "office" service on Mark Masters. *See Hoeck and Hoeck & Associates v. Schwabe, Williamson & Wyatt*, 945 P.2d 534, 539-40 (Ore. 1997).

The purported "office" service on both TRN-E and Masters also fails on separate grounds. The plaintiffs neglected to mail copies of the summons and amended complaint to either of the defendants.[1] As shown in the attached Declaration of Mark Masters the mailing he opened in early February, which first gave him notice of the amended

---

[1] Subsequent mailing of summons and complaint along with a statement of the "date, time and place at which office service was made" is required to perfect service under ORCP 7(D)(2)(c).

complaint, contained documents concerning the entry of default and not the amended complaint. (Exhibit A).  In the case of TRN-E,  the plaintiffs are not even arguing that the mailing requirement of ORCP 7(D)(2)(c) was met. And, indeed, the Proof of Service of Summons and Complaint filed on December 9, 2013, makes no claim that "office" service was completed by the mailing of the summons and complaint, together with the required statement of service, to the defendants.

      The plaintiffs argue that the purported service on Erin Terry, a receptionist, was nevertheless reasonable to give notice of the existence and pendency of the action. Reasonableness must be examined against the totality of the circumstances known to plaintiffs at the time of service.  *Hoeck,* at 540.  The proof of service refers to Ms. Terry as "BOSS, PERSON IN CHARGE" and then provides a physical description of her. [Docket #14]. According to Ms. Terry, the process servers had no reason to believe that she had any authority in the office, apparent or otherwise. She was simply standing closest to the process servers when they left the documents. (Terry Declaration, Motion to Vacate, Ex. A). Moreover, the physical description provided in the proof of service does not match Ms. Terry's. *Id*. This indicates that the process servers had no clear idea of the identity of the person they purportedly served; let alone whether that person was someone with frequent and predictable contact with the defendants, as required. *See Hoeck, Id.* No questions were asked of Mr. Terry about her contacts with the defendants or her authority within the office. (*see* Terry Declaration). Overall, the totality of circumstances known to plaintiffs at the time of purported service were not adequate for plaintiffs to believe that leaving the summons and amended complaint with Ms. Terry, or

the person they subsequently believed to be Ms. Terry, would provide the defendants with reasonable notice of the lawsuit.

2.     Arbitration is a Substantive and Meritorious Defense

The plaintiffs assert that no arbitration clause governs the dispute in this case because the Host Agreement was terminated and is no longer operative. This argument misstates the applicable law. In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) the Supreme Court explained that even where an agreement containing an arbitration clause is alleged to be illegal as a whole and therefore void *ab initio*, the arbitration clause is severable and an arbitrator, not a court, decides whether the agreement is in fact illegal. *Id.*, 444-45. Federal courts are not permitted to consider claims of fraud in the inducement of a contract in this regard. *Id.*, at 445. Accordingly, the plaintiffs' arguments that the arbitration clause did not survive are contrary to established law.

The Federal Arbitration Act (the "Act"), Section 2, embodies the national policy favoring arbitration and places arbitration agreements on equal footing with other contracts. 9 U.S.C. Section 1, *et seq.*; *Id.*, at 443. The plaintiffs' argument that the claims in this case fall outside the arbitration clause is unavailing. Any doubt concerning the scope of arbitrable issues must be resolved in favor of arbitration. In fact, when contracts contain an arbitration provision, a presumption of arbitrability arises, such that any doubt about the scope of arbitrable issues is to be resolved in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 24-25 (1983); *see also AT&T Technologies, Inc. v. Communications Workers of America,* 476 U.S. 643, 650 (1986); *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83

(1960)("[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration claim is not susceptible of a interpretation that that covers the asserted dispute. Doubts shall be resolved in favor of coverage'.") Whether the Court or an arbitrator must decide whether a particular claim is covered by the arbitration clause need not be resolved at this time. However, the defendants contend that all such matters are subject to an arbitrator's initial determination.

The dispute resolution procedures agreed on by the parties in this case cover a broad range of disputes (including the claims raised in this action): "any dispute between the Parties relating to this Agreement and/or the obligations and/or entitlements of any Party under this Agreement . . ." (Amended Complaint, Ex. A, at 24). All claims in the Amended Complaint relate to the Host Agreement and the obligations of the parties thereunder. As shown, in the attached Declaration of Mark Masters, when the claims are sent to arbitration the defendants will prove that there was no uncured breach of the Host Agreement that could justify termination. (Exhibit A – Declaration of Mark Masters). The defendants can show full compliance and performance of all obligations under the Host Agreement, including the obligation to pay agreed compensation. *Id*. The claims that Tantaros was deprived of promotional support and production resources are easily belied by the fact that the radio program had unprecedented success in its early stages. *Id*.

3.   <u>Lack of Prejudice</u>

The plaintiffs argue that TRN-E and Mark Masters purposefully ignored service in the hope this action "goes away." All the evidence is to the contrary; a "head-in-the-

sand" strategy is certainly not a rational or likely approach for individuals that the plaintiffs themselves describe as experienced and sophisticated litigants. In fact, the defendants had every reason to acknowledge service, if in fact it were made, in order to move forward with a motion to compel arbitration, and no reason whatsoever to allow an entry of default, which actually threatens their ability to arbitrate the dispute in a confidential setting, as agreed by the parties. The defendants simply lacked knowledge of the plaintiffs' purported service.  Of course, if the defendants had mailed copies of the summons and amended complaint, as required, it is highly likely that the circumstances which led to entry of default could have been avoided.

No prejudice will occur to the plaintiffs by setting aside the default in this case. The plaintiffs should not be rewarded for ignoring the dispute resolution procedures of the Host Agreement. These procedures require confidential treatment of all issues. By filing a copy of the Host Agreement in conjunction with the Complaint, the plaintiffs effectively negated the confidentiality provisions and made the terms and conditions of Tantaros' employment a matter of public record, which is now accessible by TRN-E's competitors. It is believed Tantaros is actively seeking employment with a competitor of TRN-E. In effect, the plaintiffs made a private and confidential document, one which TRN-E's competitor would not otherwise have access to, a matter of public record simply by filing it with a lawsuit in violation of the confidential dispute resolution procedures of the Host Agreement.  The plaintiffs have acted in bad faith and should not now be rewarded.

WHEREFORE, defendants request the Court it grant the Motion to Vacate Entry of Default Judgment.

Dated: 3/10/14                               Respectfully submitted,


                                             */s/Athan Tsimpedes*
                                             _____
                                             Athan Tsimpedes
                                             TSIMPEDES LAW FIRM
                                             1920 N Street, NW
                                             Suite 300
                                             Washington, DC  20036
                                             (202) 464-9910
                                             Fax (202) 747-2947
                                             *Counsel for Defendants TALK RADIO NETWORK     ENTERTAINMENT, INC. and MARK MASTERS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of March, 2014, I filed electronically the foregoing Reply to Opposition to Motion to Vacate Entry of Default using the Court's CM/ECF system, which will send an electronic notification of filing to all counsel of record who have obtained CM/ECF passwords.

*/s/Athan Tsimpedes*
_____
Athan Tsimpedes