Athan Tsimpedes
TSIMPEDES LAW FIRM
1920 N Street, NW
Suite 300
Washington, DC  20036
(202) 464-9910
Fax (202) 747-2947
*Counsel for Defendants TALK RADIO NETWORK ENTERTAINMENT, INC. and MARK MASTERS*

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ASTERO, LLC,** *et al.*, | ) Case No. 1:13-cv-06005-NLH-JS |
|  | ) |
| Plaintiffs, | ) **DEFENDANTS' BRIEF IN** |
|  | ) **SUPPORT OF MOTION** |
| v. | ) **TO COMPEL ARBITRATION** |
|  | ) **AND STAY LITIGATION** |
| **TALK RADIO NETWORK** | ) |
| **ENTERTAINMENT, INC.,** *et al.*, | ) **MOTION DATE: MAY 19, 2014** |
|  | ) |
| Defendants. | ) |

Defendants, Talk Radio Network Entertainment, Inc. ("TRNE") and Mark Masters, move to compel arbitration and stay litigation. In support whereof, the following is shown.

**BACKGROUND**

On or about December 21, 2012, the parties entered into a Host Agreement under the terms of which it was agreed that Astero, LLC ("Astero") would provide the services of Andrea Tantaros to host a radio show for TRNE. Defendant Mark Masters is CEO of TRNE, and he signed the Host Agreement in that capacity on behalf of TRNE. The Host Agreement is attached to the Second Amended Complaint as Exhibit A.

Pursuant to Section 24 of the Host Agreement, the parties agreed to a comprehensive dispute resolution procedure. In the event of a dispute, and prior to the

filing of a lawsuit, the parties agreed to seek a resolution amongst themselves on a strictly confidential basis. The first step in the dispute resolution process is to meet and confer in good faith. (Host Agreement, Section 24(a)).  In the event those efforts fail, the parties agreed to attend at least one session of mediation to continue to pursue resolution in good faith. (Host Agreement, Section 24(b)).  If mediation fails, the parties agreed that their disputes would be arbitrated. Only in the event that one party rejects a final, substantive arbitration award, was it agreed that litigation might commence; and then, only within the State of Oregon. (Host Agreement, Section 24(c) and (d)). The dispute resolution procedures of Section 25 of the Host Agreement, including the requirement to arbitrate, are applicable to "any dispute between the Parties *relating to* [the Host Agreement] and/or the obligations and/or entitlements of any Party under this Agreement." (Host Agreement, Section 24) (emphasis added).  TRNE initiated the dispute resolution process with a "meet and confer" demand letter to Astero dated January 24, 2014. (Exhibit 1). Astero refuses to comply with the demand.

      Astero and Tantaros commenced this action in total disregard of the obligations established by mutual agreement in the Host Agreement.[1] The claims and allegations of the plaintiffs' Second Amended Complaint are all clearly "related to" the Host Agreement and/or their obligations and/or entitlements under that agreement.

---

[1] The Host Agreement also contains strict confidentiality/non-disclosure restrictions (Section 30(A) and (B)). Plaintiffs violated and circumvented these restrictions by attaching the Host Agreement to the Complaint and thus making it part of the public record. TRNE claims this was done for the benefit of TRNE's competitors, who would not otherwise have access to the terms of the Host Agreement, and with whom Plaintiffs were negotiating for future employment.

Count I of the Second Amended Complaint requests a declaratory ruling of the parties' "respective legal and equitable rights and obligations under the Host Agreement." (Second Amended Complaint, at paras. 39-44) (hereinafter, "SAC, at para. _"). Count II is a claim for damages arising from TRNE's alleged breach of the Host Agreement. (SAC, at paras. 45-50). Count III claims damages for TRNE's alleged breach of the covenant of good-faith and fair dealing that is implied in the Host Agreement by operation of law. (SAC, at paras. 51-56).

The claims outlined in Count IV (fraudulent inducement), Count V (intentional misrepresentation), Count VI (negligent misrepresentation), Count VII (intentional interference with prospective advantage) and Count VIII (negligent interference with prospective advantage) all arise from the plaintiffs' allegations that material misrepresentations were made, first, in order to induce the plaintiffs to enter into the Host Agreement, and, second, to conceal TRNE's alleged failure to perform its obligations under the Host Agreement. (*See* SAC, at paras. 13, 14, 17–29). The plaintiffs' demand for an accounting in Count IX is directly related to compensation and performance under the Host Agreement.

Count X (retaliation in violation of N.J. Stat. Ann. Section 10-5-1, *et seq*.) relates to sick-leave and compensation provisions of the Host Agreement.[2] The claims for slander and libel in Counts XI and XII are related to the Host Agreement as they arise from allegations that Masters made public statements about the plaintiffs' breach of the Host Agreement's confidentiality provisions and their motivation for making the Host Agreement a public record. Accordingly, all claims raised in the Second Amended

---

[2] The allegations of discrimination in Count X are facially invalid since Tantaros was at all times an employee of Astero.

3

Complaint fall within the broad language of the arbitration clause, and this action was filed in contravention of Host Agreement's dispute resolution procedures.

## LEGAL ARGUMENT

In considering whether to compel a party to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.*, ("FAA"), which governs this matter, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3rd Cir. 2009); *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3rd Cir. 2005). The FAA reflects "the national policy favoring arbitration agreements." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).

A motion to compel arbitration should not be denied unless it can be said with certainty that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Battaglia v. McKendry*, 233 F.3d 720, 725 (3rd Cir. 2000) ("positive assurance" that a dispute is not covered is necessary or arbitration is appropriate). Ambiguity in an arbitration provision is resolved in favor of arbitration. *See Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3rd Cir. 2003).

In opposing the defendants' motion to vacate the entry of default in this action [Docket #19], the plaintiffs argued that the arbitration clause is not operative because the Host Agreement is void in its entirety by reason of fraudulent inducement. But broadly written arbitration provisions, such as the one here, encompass claims of fraudulent

inducement relating to the contract as a whole. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Buckeye*, 546 U.S. at 445-46; *Merritt-Chapman & Scott v. Pa. Turnpike Comm'n.*, 387 F.2d 768 (3rd Cir. 1967). An arbitration provision is recognized as broad for purposes of this analysis when it directs to arbitration any controversy or claim "arising out of" or "related to" the parties' agreement. *Id*. As shown, the plaintiffs are obliged to arbitrate all disputes "relating to" the Host Agreement. (Host Agreement, Section 24). Considering the strong federal policy favoring arbitration, provisions such as the one here must be "generously construed" in favor of coverage. *Mitsubishi Motors Corp. v. Soler Chyrsler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985).

Since the fraudulent inducement claim falls within the arbitration provision, whether the Host Agreement is voided, or not, is an issue that must be decided by an arbitrator, and not the Court. The Third Circuit holds that "unless it is clear that the challenge is to the arbitration clause itself, the issue of [a] contract's validity is considered by the arbitrator in the first place." *Gay v. CreditInform*, 511 F.3d 369, 386 (3rd Cir. 2007) (*quoting Buckeye,* 546 U.S. at 445-46 (2006)); *see also Prima Paint*, 388 U.S. 403-04 ("[T]he statutory language does not permit the federal court to consider claims of fraud in the inducement of contract generally."). Since the plaintiffs are not claiming the arbitration provision was itself obtained by fraud, the argument that it is inoperative lacks merit.

## CONCLUSION

A valid arbitration clause exists in this case, and all of the plaintiffs' claims fall within the scope of that clause. The plaintiffs are therefore obligated to arbitrate all claims asserted in the Complaint. Accordingly, the defendants request the Court to compel arbitration in this case and stay all litigation.

Dated:                                              Respectfully submitted,


                                                    */s/Athan Tsimpedes*
                                                    _____
                                                    Athan Tsimpedes
                                                    TSIMPEDES LAW FIRM
                                                    1920 N Street, NW
                                                    Suite 300
                                                    Washington, DC  20036
                                                    (202) 464-9910
                                                    Fax (202) 747-2947
                                                    *Counsel for Defendants*
                                                    TALK RADIO NETWORK
                                                    ENTERTAINMENT, INC. and MARK
                                                    MASTERS