TIMOTHY J. McILWAIN
ATTORNEY AT LAW, LLC
Attorney@McIlwainLaw.com
89 River Street #1538
Hoboken, New Jersey 07030
Tel: (877) 375-9599
Fax: (609) 450-7017

CHRISTIAN S. MOLNAR, ESQ. (CA State Bar No. 177665)
christian@christiansmolnarlaw.com
*(Pro Hac Vice)*
12400 Wilshire Boulevard, Suite 1180
Los Angeles, California 90025
Tel: (310) 820-9900
Fax: (310) 919-1950

Attorneys for Plaintiffs ASTERO, LLC, a New Jersey limited liability company, and ANDREA K. TANTAROS, an individual

# THE UNITED STATES DISTRICT COURT,
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTERO, LLC, a New Jersey limited liability company; ANDREA K. TANTAROS, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>TALK RADIO NETWORK ENTERTAINMENT, INC., an Oregon corporation, MARK MASTERS, an individual, and Does 1 through 10, inclusive,<br><br>Defendants. | **Case No.: 1:13-cv-06005-NLH-JS**<br><br>**DECLARATION OF PLAINTIFF ANDREA TANTAROS IN SUPPORT OF PLAINTIFFS ASTERO AND ANDREA TANTAORS' SUR-REPLY** |

1

**DECLARATION OF PLAINTIFF ANDREA TANTAROS**

## DECLARATION OF PLAINTIFF ANDREA TANTAROS

I, Andrea Tantaros, declare:

1. I am a Plaintiff in the case of Astero, LLC, *etc., et al.* vs. Talk Radio Network Entertainment, *etc., et al.,* Case Number 1:13-cv-06005-NKH-JS, in both my individual capacity, and as the managing member of Plaintiff ASTERO, LLC, a New Jersey limited liability company.

2. This declaration is being offered in support of "Plaintiffs' ASTERO and ANDREA TANTAROS' Sur-Reply." I have personal knowledge of the matters set forth in this Declaration and, if called as a witness, I could and would testify competently as to the matters stated below.

3. In or around the fall of 2012, I was approached by Defendant MARK MASTERS, an individual ("Defendant MASTERS,") the CEO of Defendant TALK RADIO NETWORK ENTERTAINMENT, LLC, an Oregon limited liability company ("Defendant TALK RADIO,") regarding recruiting me to host a morning radio show during prime-time morning hours for Defendant TALK RADIO.

4. During the course of recruiting me to Defendant TALK RADIO, Defendant MASTERS made material misrepresentations and material omissions of fact to me regarding Defendant TALK RADIO's ability to fund and support a national syndication caliber talk show, including representing to me that Defendant TALK RADIO was very well capitalized, that Defendant TALK RADIO had solid and strong existing relationships with its syndicators, and that Defendant TALK RADIO would be able to fund a national syndication quality show.

5. Based in large part on Defendant MASTERS' representations, my loan out company, ASTERO, LLC, a New Jersey limited liability company ("Plaintiff ASTERO,") entered into a "HOST AGREEMENT" ("Host Agreement") whereby I would serve as host on a nationally syndicated radio talk show for Defendant TALK RADIO, and Plaintiff ASTERO would receive a base salary in addition to "back-end"

contingent compensation based on the net revenues and "user fees" generated by the show.

6. Unbeknownst to me, Defendant TALK RADIO was, at the time they were negotiating with me regarding the Host Agreement, involved in a complex litigation with Dial Global, Inc., a large international advertising syndication conglomerate which I am informed and believe controls over 90% of the talk radio syndication market, regarding Dial Global, Inc's failure to pay advertising revenues to Defendant TALK RADIO.

7. I was later informed by Defendant MASTERS that Dial Global, Inc., had not paid any revenues to Defendant TALK RADIO for more than a year, which period covered and included the time I was induced to enter into the Host Agreement.

8. Had I known, at the time I entered into the Host Agreement, that Defendant TALK RADIO had not been paid by Dial Global, Inc., the largest talk radio advertising syndicate in the United States, and that Defendant TALK RADIO was currently involved in litigation relating to Dial Global Inc's non-payment, I would have never entered into the Host Agreement.

9. In or about late August 2013, most of Defenadnt TALK RADIO's advertising sales team and affiliate relationship representatives associated with my show were either laid off by Defendant TALK RADIO, or quit due to lack of payment from their employer, Defendant TALK RADIO. Defendant TALK RADIO also laid off the show's producer and its guest booker, which actions immediately and negatively impacted the quality of my show, and Defendant TALK RADIO's ability to brand, market, and advertise my show, or obtain advertising revenue for the same. Additionally, the marked and noticeable drop in both the quality of the production of my show and its content damaged by brand, my reputation, and the marketability of the show.

10. In September and October 2013, I caused my attorney, Joe Cane, Jr. Esq., to send correspondence, on my behalf, to Defendant TALK RADIO, outlining the

3

**DECLARATION OF PLAINTIFF ANDREA TANTAROS**

numerous material breaches of the Host Agreement by Defendant TALK RADIO, and demanding their immediate cure. True and correct copies of Mr. Cane's correspondence to Defendant TALK RADIO are collectively attached hereto as **"Exhibit A,"** and incorporated herein by reference as if fully set forth. Unfourtunately, Defendant TALK RADIO failed to cure most of the defaults. Resultantly, I filed this current action on October 8, 2013. A first amended complaint was filed on my behalf on October 21, 2014.

11. Since at least October, 2013, Defendant TALK RADIO has made statements to the press denying the validity of my claims, and declaring my case to be a "smokescreen" so that I could avoid my contractual obligations to Defendants in order to go to work for a competitor of theirs. A true and correct copy of one, representative, news report is attached hereto as **Exhibit "B,"** and incorporated herein by reference as if fully set forth. Such statements are untrue. To date, I have still not discussed employment possibilities with any other talk radio companies, and did not file this lawsuit in order to go to work for a competitor of Defendant TALK RADIO.

12. During the course of my employment with Defendant TALK RADIO NETWORK ENTERTAINMENT INC., an Oregon corporation (hereinafter "Defendant TALK RADIO,)" I had the occasion to correspond frequently with the office of Defendant MARK MASTERS, an individual (hereinafter "Defendant MASTERS,") who is the chief executive officer ("CEO") of Defendant TALK RADIO. Frequently, I did not communicate with Defendant MASTERS directly, but with and through his personal, executive assistant, Ms. Erin Terry. Additionally, Defendant MASTERS would frequently contact me only through his personal, executive assistant, Ms. Terry. Ms Terry and Defendant MASTERS always represented to me that Ms. Erin Terry was employed by Defendant TALK RADIO to work exclusively for Defendant MASTERS as his executive assistant, and that Ms. Erin Terry was authorized to communicate on his behalf and on behalf of Defendant TALK RADIO with me, and presumably with other persons, and further, that I would be able to communicate with Defendant

MASTERS by and through Ms. Terry, his executive assistant.

13. Attached hereto as **Exhibit "C,"** collectively, are true and correct copies of two (2) representative emails I received from Ms. Terry, clearly indicating her title as "Executive Assistant to CEO" [Defendant MASTERS.] Such emails are typical of the many I have received from Ms. Terry, all of which contain the same representations as to her title at Defendant TALK RADIO. The first email was sent by Ms. Terry, in her capacity as "Executive Assistant to CEO" Defendant MARK MASTERS, and was sent on behalf of Defendant MASTERS, to myself on or about August 19, 2013, at 9:22 a.m., and was actually received by me on or about that time and date, and requests my presence at a dinner with Defendant MASTERS. The second email was sent by Ms. Terry, in her capacity as "Executive Assistant to CEO" Defendant MARK MASTERS, and was sent on behalf of Defendant MASTERS, to my personal assistant Christopher Coffey, on or about August 19, 2013, at 7:53 p.m., and was shortly thereafter forwarded to me, by Mr. Coffey, and actually received by me subsequent thereto, on or about that time and date.

14. Attached hereto as **Exhibit "D"** is a true and correct copy of Ms. Erin Terry's "LinkedIn" profile homepage, which additionally represents that she is, currently, the "Personal Executive Assistant to CEO at Talk Radio Network," which was downloaded from www.linkedin.com, at my direction, on the afternoon of April 9, 2014.

I declare under penalty of perjury of the laws of the State of New Jersey that the foregoing is true and correct.

Executed on this 21th day of April, 2014, at Hoboken, New Jersey.

Andrea Tantaros

5

**DECLARATION OF PLAINTIFF ANDREA TANTAROS**